**RECEIVED**

Joseph Dale Lewis
520 Main Street
Elwood, IN 46036
Phone: 765-860-4226

OCT 0 2 2012

**THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHEN DISTRICT OF ILLINOIS

Civil Action No.

Joseph Dale Lewis
        Plaintiff,
v.

Village of Hanover Park
Rodney S. Craig – Village President
Village Board of Trustees
2121 West Lake Street
Hanover Park, Illinois 60133

Hanover Park Police Department
Dave Webb, Chief of Police
2011 Lake Street
Hanover Park, Illinois 60133

12cv7904
Judge Matthew F. Kennelly
Magistrate Sheila M. Finnegan

Redmon's Towing
Dan Redmon – Owner
1323 S. Rodenburg Rd.
Schaumburg IL, 60193

Arties Towing
Arthur Speciale - Owner
150 Woodview Drive
Elgin, Illinois 60120

Bloomingdale Autorepair & Towing Inc.
Rasmi V. Prajapati - Agent
2723 W Devon Avenue
Chicago, IL 60659

Illinois Attorney General
Lisa Madigan – Attorney General
100 West Randolph Street 12th Floor
Chicago, IL 60601

1

Chicago, IL 60601

Cook County State's Attorney
Anita Alverez – Cook County State's Attorney
69 West Washington Suite. 3200
Chicago, IL 60602

Honorable Joel L. Greenblatt ,  Associate Judge
Rolling Meadows
2121 Euclid, Rm. 205L
Rolling Meadows, Illinois 60008

                    Defendants,


Civil Rights Complaint/Civil Complaint

A. Parties

1. I, Joseph Dale Lewis, am a citizen of Elwood, Indiana, located in Madison County
and presently reside at: 520 Main Street
                    Elwood, IN  46036

3. The Defendants, are all residents of Cook County, Illinois. They presently reside at:

Village of Hanover Park
Rodney S. Craig – Village President
Village Board of Trustees
2121 West Lake Street
Hanover Park, Illinois 60133


Hanover Park Police Department
Dave Webb, Chief of Police
2011 Lake Street
Hanover Park, Illinois 60133

Redmon's Towing
Dan Redmon – Owner
1323 S. Rodenburg Rd.
Schaumburg IL, 60193

Arties Towing
Arthur Speciale - Owner
150 Woodview Dr.
Elgin, Illinois 60120

Bloomingdale Autorepair & Towing Inc.
Rasmi V. Prajapati - Agent
2723 W DEVON AVE
Chicago, IL 60659

Illinois Attorney General
Lisa Madigan – Attorney General
100 West Randolph Street 12th Floor
Chicago, IL 60601

Cook County State's Attorney
Anita Alverez – Cook County State's Attorney
69 West Washington Suite. 3200
Chicago, IL 60602

Honorable Joel L. Greenblatt , Associate Judge
Rolling Meadows
2121 Euclid, Rm. 205L
Rolling Meadows, Illinois 60008
                    Defendants,


B. Jurisdiction

1. This cause of action is brought pursuant to the Racketeer Influenced and Corrupt
Organization Act, and the 14th, 8th, 6th, and 5th Amendments of the United States
Constitution

2. Jurisdiction also invoked pursuant to 28 U.S.C § 1331, 18 USC § 1510 - Obstruction of
criminal investigations, 42 U.S.C. § 1986 : US Code - Section 1986: Action for neglect to
prevent conspiracy, and 42 U.S.C. § 2000h-2 : US Code - Section 2000H-2: Intervention
by Attorney General, The Hobbs Act: 18 USC § 1951 - Extortion under color of law, 18
U.S.C. § 371—Conspiracy to Defraud the United States, 42 U.S.C. § 1983: Civil action
for deprivation of rights.


C. NATURE OF THE CASE

On 7/31/2012 Plaintiff was driving in an area of Hanover Park, Illinois with a passenger
named Dawn Daenens. While the Plaintiff was driving, the passenger Dawn Daenens
struck the plaintiff across the face with a backfist. Ms. Daenens knuckles struck the
Plaintiff across the bridge of his nose, and her wrist struck the plaintiff in the eye. The

blow scratched the Plaintiff's eyeball making it difficult for the Plaintiff to see, and the blow to the nose disoriented the Plaintiff, and made his eyes water.

Plaintiff immediately made a right hand turn into a Walgreens parking lot. Plaintiff did not use his turn signal because he was incapacitated from the blow Ms. Daenens delivered to his face. Plaintiff then placed the vehicle in park. Ms. Daenens continued to throw punches at the plaintiff, and proceeded to kick the dashboard of Plaintiff's truck cracking the dashboard. Plaintiff asked Ms. Daenens to exit the vehicle. Ms. Daenens refused to exit the vehicle. Plaintiff then attempted to remove Ms. Daenens from the vehicle using open hands because she was swinging at the Plaintiff and damaging his vehicle. The Plaintiff was within his legal rights to remove a violent and dangerous passenger from his vehicle as long as he did not cause the passenger bodily harm. Reports will indicate that Ms. Daenens had no marks on her body.

While Plaintiff was attempting to remove Ms. Daenens from his vehicle a Hanover Police Department Officer approached the vehicle and pulled the Plaintiff out of his truck. The Officer then placed Plaintiff under arrest for domestic battery and handcuffed him. Plaintiff was never advised of his Miranda Rights until he was at the police station, and the entire investigation, and arresting actions were concluded. Plaintiff did sign a statement that he was advised his Miranda Rights, but Plaintiff only signed said statement once he was advised his Miranda Rights. Plaintiff was not advised his Miranda Rights at the time of his arrest. Plaintiff was advised his Miranda Rights at the conclusion of the police investigation.

The officers then converged on Plaintiff insisting he was drinking and driving ignoring Plaintiff's reports that Ms. Daenens struck him in the face. Officers also disregarded the fact that this Plaintiff pulled over into a private parking lot on his own accord. The officers did not pull this plaintiff over.

Plaintiff went to jail for misdemeanor domestic battery and misdemeanor DUI without justification. Plaintiff was also cited for driving without insurance when Plaintiff had valid insurance inside of his vehicle. The Police Officer's wanted Plaintiff's vehicle because they profit from it prior to the conclusion of court proceedings.

Plaintiff was arrested and transported to a local Cook County Circuit Court. At Plaintiff's bond hearing the prosecution illegally presented dismissed charges as evidence against the Plaintiff. The prosecution's alleged victim Dawn Daenens attempted to get the domestic charges dropped at said bond hearing without telling the real truth about punching Plaintiff, in attempts to keep herself out of jail. This plaintiff went to jail after being attacked by a passenger in his vehicle. While in handcuffs this plaintiff watched the arresting officers treat Ms. Daneans like a victim as she left the scene.

At bond hearing regarding this incident, Judge GreenBlatt of the Cook County Court then informed the Plaintiff the following "You picked the wrong time to turn without signaling, and you picked the wrong time to try and push you girlfriend out of the vehicle." The Judge then set Plaintiff's bond at $5000 surety that required Plaintiff to pay

$500 to bond out of jail. This Judge made bias statements indicating the Plaintiff was guilty before being tried. These statements are on the record.

Plaintiff then had to travel back to central Indiana approximately 8 hours round trip to get money required to get his truck out of impound because it was towed. When the Plaintiff's vehicle was towed the Officer's refused to allow Plaintiff's passenger Ms. Daenens to take possession of said vehicle, and the vehicle was in a Walgreen's Parking lot. The Plaintiff pulled over in this parking lot at his own discretion because he was being attacked by Ms. Daneans while driving, he was not pulled over by the police.

Plaintiff was informed by the Hanover Police Department in Illinois that he had to pay a administrative penalty of $500 to their department to release his vehicle. Plaintiff was informed that after paying this $500 administrative penalty that he was then required to pay the tow company Bloomingdale's Towing, an additional $235. Plaintiff paid a total of $735 for towing fees, and Police penalties before ever being convicted of a crime. More specifically the Plaintiff was forced to pay a $500 administrative penalty to the Hanover Police Department before being convicted of a crime. This is all occurring in Cook County, Illinois, Rolling Meadows Circuit Court under cause number 12-DV-30692-01.

Plaintiff stopped at a Bloomingdale Towing garage and was informed by staff that the main location he needed to go to was further down the road. It appeared that this repair garage was associated with a used car lot next door (very disturbing). While the Plaintiff was at this repair garage a staff member of Bloomingdale Towing was already aware of what had happened to the Plaintiff in this case. He was laughing at this Plaintiff, and attempting to be confrontational. I guess this is just a funny situation, everybody is laughing.

One has to wonder how the elected officials in the Chicago area and Illinois have been able to manipulate our federal protections in order to benefit their goals, agendas, and finances. One has to wonder how females, who have fought so vigorously for equal rights and protections, have managed to form a legal system in Cook County, Illinois, and other parts of the country that is without a doubt discriminating against men.

Laws regarding domestic battery were intended to protect victims of actual abuses, not to drag individuals into court for the sake of a Prosecutor or Police Officer's greed and hunger for convictions.

The United States Federal Government has not only a duty, but an obligation to protect its citizens from the events Plaintiff is about to describe in the following claims.

This is a brief description of the nature of the case, and what initiated these claims. The following claims will describe in detail crimes and violations of law.

Nothing bothers the Plaintiff more than people who discriminate and steal under the guise of law. But hey, ain't no money like free money right? If we could all steal like some of

the Defendants in this case, we would all be better off financially.

The next step is allowing a police department to arrest individuals under the suspicion of public intoxication, and to charge fees/penalties to the accused to release property like watches, phones, and jewelry before they are convicted in a court of law. We cannot allow this practice. Essentially, this is currently transpiring under the guise of local municipal code.

D. Cause Of Action

I allege that the following of Plaintiff's constitutional rights, privileges, or immunities have been violated and that the following facts form the basis of my allegations:

**Claim 1.**
Supporting Facts – Regarding the Village of Hanover Park and The Hanover Park Police Department.

In 1895, the U.S. Supreme Court, in a decision in the case Coffin v. United States, 156 U.S. 432; 15 S. Ct. 394, traced the presumption of innocence, past England, Ancient Greece and Ancient Rome, and, at least according to Greenleaf, to Deuteronomy. The Coffin case stands for the proposition that at the request of a defendant, a court must not only instruct on the prosecution's burden of proof--that a defendant cannot be convicted unless the government has proven his guilt beyond a reasonable doubt--but also must instruct on the presumption of innocence--by informing the jury that a defendant is presumed innocent. The Court stated.

Furthermore, under Illinois State Law the following legislation is in place:

**720 ILCS 5/3-1**
**Formerly cited as IL ST CH 38 ¶□3-1**
**5/3-1. Presumption of Innocence and Proof of Guilt**
**Currentness**
**§ 3-1. Presumption of Innocence and Proof of Guilt. Every person is presumed innocent until proved guilty. No person shall be convicted of any offense unless his guilt thereof is proved beyond a reasonable doubt.**

The above case references in Coffin V. United States, and 720 ILCS 5/3-1, as well as the 14th and 5th Amendments of the United States Constitution indicate that any person accused of a crime within the Borders of The United States of America, and the State of Illinois is presumed innocent until proven guilty, and therefore, no financial penalties can be imposed by a police department or court on a citizen, until a conviction in a court of law. The Village of Hanover Park and the Hanover Park Police department are in violation of these said cases, laws and rights. A bond can be placed on an individual, but no financial penalty or fee may be assessed to said individual until conclusion in court on the related charges. These Defendant's are financially penalizing individuals accused of crimes by means of extortion before the resolution of the matter in a court of law. If the

6

integrity of the United States Justice System is to remain in tact, we cannot allow people to place the carriage before the horse.

Per the Racketeer Influenced and Corrupt Organizations act, the defendants Village of Hanover Park, and The Hanover Park Police Department, are guilty of operating a Racket and actively Extorting money from citizens under the guise of local municipal code. Racketeering and Extortion both fall under the Federal RICO ACT as well as The Hobbs Act under 18 USC § 1951 extortion under the "color of law", 42 U.S.C. § 1983: Civil action for deprivation of rights, and 42 U.S.C. § 1986: Action for neglect to prevent conspiracy.

The Village of Hanover Park governing body has taken it upon themselves to draft and administer financial penalties before the accused are ever convicted of a criminal offense per the following municipal code they enacted:

## Chapter 62, Article V Sec. 62-5-001 Vehicle seizure and Impoundment

(a) Violations authorizing seizure. Except as provided in subsection (b), a motor vehicle, operated with the permission, express or implied, of the owner of record, that is used in connection with the following violations, shall be subject to seizure and impoundment by the village, and the owner of record of said vehicle shall be liable to the village for an administrative penalty in addition to any towing and storage fees as hereinafter provided.

(1) Driving with suspended or revoked license, 625 ILCS 5/6-603 or section 17-5/6-303 of this Code, an administrative penalty of $500.00, except that vehicle shall not be subjected to seizure or impoundment if the suspension is for an unpaid citation (parking or moving) or do to failure to comply with emission testing.

(2) Driving under the influence, 625 ILCS 5/11-501(a), an administrative penalty of $500.00.

(3) When a motor vehicle is operated by a person against whom a warrant has been issued by a Circuit Court in Illinois, for failing to answer charges that the driver violated (a)(1) or (a)(2) of the above or for a violation of 625 ILCS 5/6-101, an administrative penalty of $500.00.

(4) No valid drivers license, 625 ILCS 5/6-101(a), an administrative penalty of $500.00.
a. Except a person that had a valid driver's license that is expired for less than one year.
b. Except a person who is less than 17 years of age operating a motor vehicle on any street or highway when in violation of the Child Curfew Act (720 ILCS 555/0.01 et seq.) or section 66-71

(5) Fleeing or attempting to elude, 625 ILCS 5/11-204, an administrative penalty of $500.00

(6) Reckless driving; pursuant to 625 ILCS 5/11-503 and street racing; pursuant to 625

7

ILCS 5/11-506, an administrative penalty of $500.00.

(7) Illegal transportation of alcohol/driver, 625 ILCS 5/11-502(a), an administrative penalty of $500.00.

(8) Firearms offenses, an administrative penalty of $500.00;
a. 720 ILCS 5/24-1, Unlawful use of weapons.
b. 720 ILCS 5/24-1.1, Unlawful use or possession of weapons by felons or persons in the custody of the Department of Corrections facilities.
c. 720 ILCS 5/24-1.2, Aggravated discharge of a firearm.
d. 720 ILCS 5/24-1.2-5, Aggravated discharge of a machine gun or a firearm equipped with a device designed or used for silencing the report of a firearm.
e. 720 ILCS 5/24-1.5, Reckless discharge of a firearm.
f. 720 ILCS 5/24-1.6, Aggravated unlawful use of a weapon.
(9) Drug offenses: Possession of cannabis more than 30 gms., 720 ILCS 550/4.(d), (e), (f), and (g), an administrative penalty of $500.00.
(10) Drug offenses: Unauthorized possession of controlled substances, 720 ILCS 570/402, an administrative penalty of $500.00.

To collect these penalties the Hanover Park Police Department takes and holds vehicles with the cooperation of the towing companies until the Police Department is paid $500.

If an individual is presumed innocent until proven guilty then the Plaintiff questions how the Hanover Police Department can administer a financial penalty or fee of $500 without Due Process of Law, before said individuals are convicted or acquitted of a crime. Not only is this a violation of rights to Due Process of Law, but it can cripple an individuals access to financial resources to pay for their defense regarding criminal matters.

More specifically, under Hanover Park Municipal Codes regarding vehicle violations like DUI's, the accused are required to pay the Hanover Police Department a fine prior to a conviction or acquittal to release their vehicle just as the Plaintiff had to pay in this case. The Planitiff paid said $500 to the Hanover Police Department, and was then required to pay Bloomingdale's Towing $235 to get his vehicle released from their tow impound.

The goal of the legal system in the United States is to give the accused access to Due Process of Law, and if the accused are found guilty, to then assess penalties and rehabilitate, so that the same offense does not occur again. Per the 8th Amendment of the United States Constitution regarding excessive fines and fees, the goal of government should not be to ruin an individual's livelihood and ability to defend themselves' prior to trial, and without Due Process of Law, especially in the case of a misdemeanor offense as in Plaintiff's case. For capital offenses, and serious violent crimes with strong evidence Plaintiff could understand placing an individual's livelihood at risk because said person is a flight risk.

Exploitation is precisely what is happening to low income people within the city limits of Hanover Park. The Hanover Park President and Mayor, as well as the Hanover Park

Board of Trustees are utilizing the Hanover Park Police Department to operate a racket by extorting money from citizens before they are ever convicted or acquitted in court. This racket and extortion is being operated in conjunction with the defendant's Bloomingdale's Towing, Arties Towing, and Redmon's towing. Their policies, in violation of the Hobbs Act, RICO ACT, 14th, 8th, and 5th Amendments, place the said towing companies in an advantageous position to take possession and ownership of the accused individual's vehicles to sell at a large profit.

In such distraught economic times, many citizens of The United States live paycheck to paycheck, barely making ends meet. When the Hanover Park Police Department imposes a $500 "penalty" or "fee" prior to the accused being tried for their alleged crime; it creates a situation for the Department to profit from a self imposed illegal financial penalty. This $500 "penalty" also destroys and compromises the integrity, and honesty of a police investigation, when the police department and its governing body stand to profit from a criminal allegation before it is heard in court.

This $500 "administrative fee" charged by The Hanover Park Police Department creates an environment where some of the accused cannot afford to pay the bill, in order to get their vehicle released from the tow company impound. In Hanover Park, every person whose vehicle is impounded for the vehicle offenses listed above in the Hanover Park Municipal Code, ends up paying approximately $675 to $750 at a minimum to get their vehicle out of impound. And if the accused cannot pay the Hanover Police Department the $500, and the Towing Company afterwards, the Towing Company will then file paperwork after 30 days with the State to take possession of the vehicle. After the Towing Company takes possession of the vehicle it is sold locally by the towing company or sold through auctions. The troubling part is that a person's vehicle can be impounded by a towing company; they can take possession of the vehicle (legal ownership), and sell the accused person's vehicle before that person is ever acquitted or convicted of the related offense that resulted in the vehicle being impounded. This is more likely to happen when the police charge a $500 "penalty".

Keep in mind, that while a person is attempting to find the $700 to get their vehicle out of the tow company impound, the vehicle is incurring a $35 to $40 daily storage fee. While the accused individual is attempting to find the $700 to get their vehicle out of impound, the vehicle is accruing additional daily charges. In effect, the accused are not only facing the stresses of criminal charges, but the clock is ticking. They have to find money quickly, and if they do not find the money quickly, they will have to find even more money to pay daily storage fees to the towing company. Imagine the stresses this can cause if the accused are innocent of the alleged crimes that resulted in their vehicle being impounded. They may be innocent, but until they prove their innocence, they will not have a vehicle to travel to and from work until they either prove their innocence, or pay the towing company and the Hanover Park Police Department nearly $1,000, or more in some cases.

The Village of Hanover Park has made sure to extend the municipal code so that vehicles can be towed from private property, and when a second individual is present to keep the

vehicle for the accused, to take possession of the vehicle regardless of the presence of a second vehicle occupant. This further insures that The Village of Hanover Park can extort $500 out of the accused by holding their vehicle. The Hanover Park Police Department can tow the accused person's vehicle from anywhere, at anytime within Hanover Park jurisdiction.

The Village of Hanover Park governing body has conspired with the towing companies, listed as defendants in this complaint, to set the fees associated with getting a vehicle released from the towing impound so high, that a very large percentage of citizens cannot afford to get their vehicles back. This is enabling the towing companies to take possession of vehicles, and sell them, resulting in hundreds of thousands of dollars in profits. These same practices are resulting in millions of dollars in profits in the regional Chicago Area by other local municipals, police departments, and towing agencies. One can imagine the profits reaped through the sale of vehicles for which a towing company acquired for free, at no cost. These illegal practices create a situation that promotes monetary kick back from the towing companies to individuals working within The Village of Hanover Park, and The Hanover Park Police Department. These practices fully compromise the integrity of our legal system via the 14th Amendment Due Process of Law clause.

Even more disturbing than the other facts is that the Hanover Park Police Department attempts to deceive people whose vehicles have been impounded in their paperwork. The Village of Hanover Park claims in their municipal code that the $500 for a DUI is an "administrative penalty". However, on the paperwork labeled Appendix –A 275-P Revised 12/21/2011, provided to the accused by the Hanover Police Department it states "the driver was driving under the influence of alcohol or drugs - $500 penalty" All of the other offenses listed on this form to include: driving while suspended or revoke license, DUI, driving while warrant was issued for his arrest, no valid driver license, and illegally transporting alcoholic liquor, are listed as being imposed a "$500 penalty".

Allow to plaintiff to clarify and restate to the court the previous paragraph. In The Village of Hanover Park's municipal code they state the $500 fines are "administrative penalty". On the Hanover Park Police Departments paperwork given to the accused, whose vehicle was impounded, they state the $500 is a "penalty". The plaintiff has this paperwork in his possession. The Village of Hanover Park is listing the $500 as an "administrative penalty" to make the local ordinance appear legal to state and federal officials. The Hanover Park Police Department is listing the $500 as a "penalty" on the accused individual's paperwork, to make the fee appear bona fide, and legal to people who have to pay them $500 to get their vehicle released from the Hanover Park Police Department.

Also, the Hanover Park Police Department Staff are paid on salary and hourly rates, operating on fixed work week hours. Plaintiff questions the justification for a $500 "administrative penalty". An administrative penalty is incurred to cover an expense. If the Hanover Park Police Department staff is paid a salary, or hourly rate, and their maximum work week includes fixed hours, then what is this "administrative penalty" used to cover? The labor costs for The Hanover Police Department are "fixed", they incur the same

payroll expenses weekly regardless of how many vehicles they impound within rational numbers. Vehicle Impoundment paperwork processed by the Hanover Park Police Department does not have an affect on the Departments payroll expenses. The cost for paper and stamps for one incident is less than $5.00. This $500 "administrative penalty" is applied under the circumstances of a profit, not to cover the cost of the incident, and the funds are used at The Village of Hanover Park, and Hanover Park Police Department's personal discretion. This is by definition an illegal racket, and extortion with a pure disregard to Due Process of Law.

This is a definition of **Due Process of Law** per the 14th Amendment in general: A fundamental, constitutional guarantee that all legal proceedings will be fair and that one will be given notice of the proceedings and an opportunity to be heard before the government acts to take away one's life, liberty, or ***property***. Also, a constitutional guarantee that a law shall not be unreasonable, Arbitrary, or capricious.

The U.S. Supreme Court has found due process violations where the actions of a government official are clearly arbitrary. In City of Chicago v. Morales, 527 U.S. 41, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999), for example, it struck down a Chicago anti-gang ordinance as unconstitutional on due process grounds. The ordinance allowed police officers to break up any group of two or more persons whom they believed to be loitering in a public place, provided that the officer also believed that at least one member of the group was a gang member. The ordinance had led to more than 43,000 arrests. Because the ordinance did not draw the line between innocent and guilty behavior and failed to give guidance to police on the matter, the ordinance violated the due process rights of the subjects of these break-ups. The Court held that since the ordinance gave absolute discretion to the police officers to determine what actions violated the ordinance, it was an arbitrary restriction on personal liberty in violation of the Due Process Clause.

The Village of Hanover Park assumes that a person accused of crimes such as driving under the influence of alcohol already has damaged character issues simply by being charged for the crime, and that they can exploit that by empowering themselves to go above the United States Constitution, the law of the land, and make up their own laws at their own profit.

The Plaintiff would like to point out to the court that current law is complex, and a vast majority of United States Citizens lack the knowledge to understand "how" what is happening to them is against the law on state and federal levels. Most know it is not right, but they cannot identify how it is wrong. Furthermore, if the accused cannot afford to pay $700 to $1,000 in fees, then they definitely cannot afford to pay counsel to file suit on their behalf. This is by definition an exploitation of low income citizens.

How can an individual be entitled to Due Process of Law, and unbiased accurate reporting of crime by the Hanover Park Police Department, when the Hanover Park Police Department, and The Village of Hanover Park stand to gain profits from the situation, before the situation is resolved in a court of law? The answer to this question is that citizens, to include the Plaintiff, can not be entitled to Due Process of Law, without

11

bias, when the Hanover Park officials profit from allegations they are making against the accused, before the accused are ever convicted or acquitted of the allegations that resulted in their vehicle being impounded. This is also a violation of the 8th Amendment to the United States Constitution that states the following: excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

Furthermore, the plaintiff was accused of driving without insurance. The officer who arrested the Plaintiff never asked for a copy of his vehicle insurance, and obviously never looked for Plaintiff's insurance because it was in the glove box of Plaintiff's truck. Plaintiff took pictures of the insurance paperwork he retrieved from his glove box with Bloomingdale Towing's building and tow trucks in the background. Plaintiff did this to prove he had insurance in the truck at the time of his arrest, and that the arresting officer, Officer Palace, was attempting to run up charges on the Plaintiff. Plaintiff was never read his Miranda Rights until just before he was placed in a jail cell, at the conclusion of the Police Officer's investigation, long after the Plaintiff was arrested. Plaintiff continuously asked to speak with an attorney, and asked for his rights to be presented to him, and the officer's repetitively informed the Plaintiff that he had no rights until he completed the breathalyzer tests and questioning at the Hanover Park Police Department. Plaintiff is not a resident of Illinois, and asked to speak with an attorney so that he knew exactly what his rights were.

The Plaintiff went to jail for Driving While Under the Influence of Alcohol when he was not intoxicated, so the Hanover Park Police Department could profit $500 from the situation. Plaintiff went to jail for Domestic Battery when he was not the aggressor, his passenger Dawn Daenens struck him in the face while he was driving and looking at the road. Plaintiff could have bonded out of jail for the misdemeanor DUI charge for $100. Because of false allegations and discrimination regarding Domestic Battery, the Plaintiff was forced to appear in front of a Judge who set bail at $5000 for which the Plaintiff had to pay $500 for his release.

Dawn Daenens let the Plaintiff burn to save herself from a trip to jail for assaulting the Plaintiff. She attempted to get the charges dropped without telling the truth at Plaintiff's bond hearing, and the Prosecution insisted on pursuing charges. Dawn Daenens had no marks on her body from the incident. Plaintiff had no marks on his face because he was struck across the bridge of his nose, and his eyes were red and watering because of it when Plaintiff was initially arrested. No charges were filed against Ms. Daenens.

Plaintiff has witnesses that Ms Daenens struck him in the face while driving. Ms. Daenens called her longtime friend Michelle Lewis and advised Mrs. Lewis that she struck the Plaintiff in the face while he was driving. Ms. Daenens also kicked and cracked the dashboard of Plaintiff's truck. The crack in the dashboard was approximately 10 inches long for which the Plaintiff has photographs of.

If the The Village of Hanover Park, and the Hanover Park Police Department are allowed to impose penalties on the accused, it should be only after the accused are convicted in court through arrangements with said court.

The Defendant's are going to attempt to state that they allow the opportunity to appeal vehicle seizure's etc. An appeal before the same people who are extorting money from citizens through an illegal racket is what the Plaintiff would refer to as a **Kangaroo Court Practice**.

In reference to 18 U.S.C. § 371 Conspiracy to commit offense or to defraud United States, the following applies to all Defendants in this case:

The defendant's in this case have defrauded the United States out of its intended governing functions entitled to the Citizens of the United States under constitutional entitlements. More specifically, the Defendant's are defrauding the United States Federal Government out of constitutional protections that the Federal Government has enacted and promised to its citizens and federal members.

When state and local agencies begin drafting law that defies the laws and protections enacted by the United States Federal Government, more specifically acts of Congress, they begin to compromise the official functions of the Federal Government. Such actions then require government resources through the federal courts to enforce federal protections granted by the U.S. Constitution usually after the damages have occurred. This is an unnecessary use of Federal resources that could have been avoided if the Defendants in this case obeyed the laws of the U.S. Constitution.

The Hanover Park Police Departments ability to retain said $500 "administrative penalty" is 100% reliant on obtaining a conviction in a court of law. Because of this circumstance, the integrity in criminal court of the arresting Hanover Park Police Department is compromised. This circumstance is very similar to paying a witness to testify against someone. The charges Plaintiff is facing that were initiated by the Hanover Park Police Department cannot be allowed to proceed in court due to conflicts of interest regarding these claims.

Hass v. Henkel, 216 U.S. 462 (1910), and Hammerschmidt v. United States, 265 U.S. 182 (1924). In Hass the Court stated:

The statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of government . . . **(A)ny conspiracy which is calculated to obstruct or impair its efficiency and destroy the value of its operation and reports as fair, impartial and reasonably accurate, would be to defraud the United States by depriving it of its lawful right and duty of promulgating or diffusing the information so officially acquired in the way and at the time required by law or departmental regulation.**

Hass, 216 U.S. at 479-480. In Hammerschmidt, Chief Justice Taft, defined "defraud" as follows:

To conspire to defraud the United States means primarily to cheat the Government out of

property or money, **but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest.** It is not necessary that the Government shall be subjected to property or pecuniary loss by the <u>fraud</u>, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane or the overreaching of those charged with carrying out the governmental intention.

Hammerschmidt, 265 U.S. at 188.
The general purpose of this part of the statute is to protect governmental functions from frustration and distortion through deceptive practices. Section 371 reaches "any conspiracy for the purpose of impairing, obstructing **or defeating the lawful function of any department of Government."** Tanner v. United States, 483 U.S. 107, 128 (1987); see Dennis v. United States, 384 U.S. 855 (1966). **The "defraud part of section 371 criminalizes any willful impairment of a legitimate function of government**, whether or not the improper acts or objective are criminal under another statute." United States v. Tuohey, 867 F.2d 534, 537 (9th Cir. 1989).

The word "defraud" in Section 371 not only reaches financial or property loss through use of a scheme or artifice to defraud but also is designed and **intended to protect the integrity of the United States and its agencies, programs and policies**. United States v. Burgin, 621 F.2d 1352, 1356 (5th Cir.), cert. denied, 449 U.S. 1015 (1980); see United States v. Herron, 825 F.2d 50, 57-58 (5th Cir.); United States v. Winkle, 587 F.2d 705, 708 (5th Cir. 1979), cert. denied, 444 U.S. 827 (1979).

For the Defendant's to argue that "administrative penalties" or "penalties" imposed by a police department or municipal are of a civil nature unconnected to the initiating criminal charges via the 14th Amendment of the United States Constitution Due Process of Law Clause is a manipulation of the truth. The civil "administrative penalties" are imposed through the acquisition of the arrest, and therefore directly related. One cannot exist without the other. As a matter of fact, the arrest is promoted by the **"opportunity"** of profit for the Police Department.

Motions to dismiss based off of claims that attempt to separate civil penalties and fees imposed, as well as criminal charges for the same offenses, is a court practice that has been used to twist the reality of what is actually happening. It is a technical loophole filed and frequently supported in courts to cheat people, especially pro-se filers, when Municipals, Counties, and States break the law and cause damages to their citizens at their own profit.

Federal courts in Illinois have found in the past that "administrative fees/penalties" are a deterrent to prevent individuals from committing crimes. Plaintiff states that these "administrative fees/penalties" are not posted on signs. If the "administrative fees/penalties" were posted on the roads or advertised much like the seatbelt law, the fines would considered be a deterrent. These fines are not a deterrent because the fines are not posted, the fines are a trap. In the Chicago area suburbs people pass through Schaumberg, Hanover Park, Hoffman Estates, and many other local municipals on their

way to work. It is nearly impossible to know what municipal city limit you are in at any given time, and it's unreasonable, and impossible to expect that people are aware of everything included in all the local municipal codes in the Chicago area.

The $500 fine imposed by these Defendant's are excessive because it is combined with towing fees bringing the total to an estimated $700 for towing and one day of vehicle storage. Many fines can exceed $1,000 if the fees are not paid quickly. By the time Plaintiff recovered his vehicle he paid $735. $735 is an excessive amount per the 8th Amendment regarding excessive fines. $735 is a house payment, Plaintiff's father pays $547 per month on his mortgage. For a lot of people $735 is equal to or more than their house payment or rent.

Probable cause and direct evidence exists to show that the integrity of the Hanover Park Police Department's investigation's, and Due Process of Law is compromised when they profit $500 from the initiating arrests through extortion. This probable cause and direct evidence will be disclosed to the court after Defendant's file their motion to dismiss this case.

### Claim II.
Supporting facts – Regarding the Illinois Attorney General, and Cook County, Illinois State's Attorney

The 14th Amendment to the United States Constitution guarantees citizens rights to Due Process of Law. This includes citizen's rights to not be discriminated against based on Race and Gender. The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432 (1985)

The Illinois Attorney General Lisa Madigan has made it very clear on her website (http://illinoisattorneygeneral.gov/women/index.html) that women will be favored regarding domestic altercations between men and women. The following statements were copied and pasted directly from her website into this document:

**Advocating for Women**

**The first female Attorney General of Illinois, Lisa Madigan has long advocated in state government for women's safety.**

**Understanding that the painful effects of sexual assault, domestic violence and other forms of violence against women impact every person in Illinois, Attorney General Madigan and her office offer numerous programs and services aimed at protecting the rights and well-being of women.**

**These programs and services include:**
**Grant funding through the Violent <u>Crime</u> Victims Assistance Act to help victims of violent crime recover and rebuild their lives;**
**Trainings and seminars to provide law enforcement and first responders with better tools to prevent and solve <u>crimes</u> against women, prosecute domestic abusers and sex offenders, and help victims cope with the trauma of violent crime; and**
**A comprehensive directory to make services more readily available to women in need.**
**Through a vigorous legislative agenda in Springfield and innovative partnerships with law enforcement around the state, Attorney General Madigan also continues to work toward improved sex offender management in Illinois, a reduced rate of crime against women, and more aggressive prosecutions of <u>criminals</u> who abuse women.**

Nowhere on the Attorney General's website will you find any statements where she claims to advocate for the rights of men in domestic situations. If these statements on the Illinois Attorney General's website just so happen to change or are added to, it was done after this complaint was filed. At this very moment, as you read this document, there are men in jails for defending themselves against women who attacked them. A woman can be swinging an axe at man, if that man pushes her down in defense, and it leaves a mark, the man is going to jail.

The Illinois Attorney General's stance on favoring women in Domestic Situations has filtered down to Anita Alverez, the Cook County Prosecutor. If women want equal laws regarding rights in the United States, then Plaintiff argues that men are entitled to equal protection under Domestic Violence Law as well. The general attitude of prosecutors such as Lisa Madigan is that they favor women in domestic situations, and the law need not state bias, it is stated on the Illinois Attorney General's website.

Plaintiff is entitled to relief because he has been discriminated against and falsely charged with domestic battery because of policies just like the ones issued by the Illinois Attorney General. Gain the female vote by favoring females, great policy, Plaintiff would do the same if he was power hungry.

Furthermore, the crimes described in claim 1 of this document being committed by municipal police departments and municipal governing bodies in the Chicago area are not being prosecuted, or prevented, by either Anita Alverez (Cook County Prosecutor) and staff, or Lisa Madigan (Illinois Attorney General) and staff. Plaintiff states in claims that The Village of Hanover Park, and the Hanover Park Police Department are operating a racket and extorting money from citizens in conjunction with Bloomingdale's Towing, Arties Towing, and Redmon's towing. The lack of actions by these two prosecutorial offices falls under the following statutes: 18 USC § 1510 - Obstruction of criminal investigations, 42 U.S.C. § 1986: Action for neglect to prevent conspiracy, and 42 U.S.C. § 1983: Deprivation of rights, in relation to the Cook County Prosecutor's Office and the Illinois Attorney General's Office. These prosecutor's have knowledge of these crimes of racketeering and extortion by municipals in their jurisdiction and they choose to do nothing. These prosecutor's are also liable under 18 U.S.C. § 371 Conspiracy to commit

16

offense or to defraud United States.

Those who fail to prosecute violations of the law are just as guilty as those who break those very same laws when they have knowledge of said violations.

Anita Alverez and Lisa Madigan are allowing these illegal rackets and crimes of extortion regarding citizens vehicles to occur because they support Illinois new found justification that the accused are guilty, until proven innocent, and therefore liable to be financially penalized by a police department before the accused are convicted in a court room.

Illinois prosecutors are failing to take action against similar criminals all over the Illinois area. Class action lawsuits regarding police department administrative tow fees are in Illinois State Court's this very moment. The Plaintiff is asking for damages because of their lack of action, and the Plaintiff is asking the Judge of the Federal Court to put a stop to these police department administrative penalty practices immediately.

## Claim III

The Hanover Park Police Department uses three towing companies to impound vehicles. Those companies are named Bloomingdale's Autorepair and Towing Inc, Arties Towing, and Redmon's Towing.

These three towing companies are in violation of the Racketeer Influenced and Corrupt Organization Act and other listed regulations by taking possession (ownership) of accused person's vehicles for which the Hanover Park Police Department imposed a $500 penalty to release said vehicle, and then Bloomingdale's Towing charging additional fees that in the plaintiff's case was $235. Bringing Plaintiff's grand total to $735 to release his vehicle from Bloomingdale's impound. $735 is an excessive amount per the 8th Amendment regarding excessive fines. $735 is a house payment, Plaintiff's father pays $547 per month on his mortgage. In this case, the 8th Amendment pertaining to excessive fines has been circumvented by separating the fines between the police department and the towing company.

These three towing companies have conspired with officials from The Village of Hanover Park to circumvent Illinois Regulations requiring "reasonable towing fees" under the guise of illegal laws.

By these three tow companies conspiring with The Village of Hanover Park President and Board of Trustees, to impose a $500 penalty through the Hanover Park Police Department, they have made retrieval of vehicles from these tow company impound lots impossible for low income individuals. These towing companies are then taking ownership of the accused citizen's vehicles, and selling them for thousands of dollars. This is also a violation of the 8th Amendment to the United States Constitution that states the following: "Excessive bail shall not be required, nor excessive fines imposed,

nor cruel and unusual punishments inflicted." Plaintiff would like to point out to the court that the idea of "excessive fines "depends on the individual. $700 to $1,000 may not be difficult for a Judge or corporate executive to pay, but the people working at wages of $10 to $15 per hour will have difficulty covering such a penalty. To truly judge what an excessive fine is, one would have to base said fine off of an income ratio, and consider a broad range of employment incomes, not just the middle upper class and above.

It is feasible to accept that a $150 fine is one that a broad range of individuals can pay, it is not feasible to accept that a $700 fine is one that a broad range of individuals can pay. Plaintiff seeks punitive damages from all three said towing companies to put a stop to said illegal activities in this complaint.

**Claim IV.**

Plaintiff is filing suit against all Defendants regarding 42 U.S.C. § 1983: Civil action for deprivation of rights. Plaintiff has been deprived of rights through criminal actions and a lack of action among Illinois elected officials to stop the illegal actions listed in this complaint.

Judge GreenBlatt and the prosecutor actively pursuing charges against the plaintiff in Cook County Rolling Meadows Circuit Court cause number 12-DV-30692-01, are the extending hand of the Hanover Park Police Department, who arrested Plaintiff on "A Misdemeanor Domestic Battery", "A Misdemeanor DUI charges", "failure to signal", and "driving without insurance". This court under the jurisdiction and guidance of Judge GreenBlatt is allowing charges against Plaintiff to proceed disregarding the fact that the initiating police department is utilizing policies in violation of the 14th Amendment regarding Due Process of Law and violations of the RICO act.

Not one person can inform this plaintiff who the prosecutor on his case is. Plaintiff does know that she is a Cook County State's Attorney, but the clerk of courts cannot see who the prosecutor is. Amazing that an affidavit of probable cause can be filed against the plaintiff and the prosecution entering such, and no one can tell Plaintiff her name, not even the State's Attorney's office. The State's Attorney's office provided Plaintiff with two names, and could not pinpoint which one was on Plaintiff's criminal case.

Furthermore, on 8/2/2012 at Plaintiff's bond hearing regarding said charges, Judge GreenBlatt made statements indicating he was not impartial. He stated the following to the Plaintiff, "You picked the wrong time to turn without signaling, and you picked the wrong time to attempt to push your girlfriend out of the vehicle." Judges are intended to be impartial, this is not impartial. This Judge also allowed the prosecutor to refer to dismissed charges as ammunition to set the Plaintiff's bond higher. During this hearing the Judge was scolding the Plaintiff and pointing his finger at the Plaintiff.

As of today 8/27/2012 at 9:30 a.m., Judge GreenBlatt earned his way into this lawsuit by attempting to intimidate Plaintiff at a hearing regarding this case at said date and time. He continuously scolded the Plaintiff. The tone of his voice was in tune with intimidation.

Judge GreenBlatt denied my request to appoint a public defender ignoring claims that Plaintiff had no more money. Between paying a $500 bond, $500 paid to the Hanover Park Police Department to release impounded vehicle, and $235 paid to Bloomingdale's Towing, and $360 to Plaintiff's father for travel expenses between Indiana and Chicago, the plaintiff no longer has the financial resources to pay counsel. Plaintiff was denied employment at Mercedes Benz of Naperville because of the allegations he is facing in this court.

Judge GreenBlatt was attempting to intimidate Plaintiff in court on 8/27/2012. He told Plaintiff the following, "Look at the woman to your left, that is the Cook County State's Prosecutor, I would advise you to retain counsel." This Judge said this with an intimidating tone, and he continuously cut the Plaintiff off not letting him speak and finish sentences, and continuously scolded the plaintiff without justification. The Plaintiff did look at the prosecutor to his left when the Judge told him to, and at that time he hoped she had a quality federal attorney to represent her office in court.

Per the 6th Amendment of the United States Constitution the Plaintiff is entitled to be appointed counsel if he cannot afford to pay counsel. Judge GreenBlatt is now in violation of the 6th Amendment. Judge GreenBlatt is also in violation of Judicial Misconduct by failing to remain impartial in court hearings, and by attempting to rattle the nerves of Plaintiff through intimidation. Judge GreenBlatt has also allowed one count of prosecutorial misconduct to take place without redaction regarding the presentation of inadmissible dismissed charges to the court.

These allegations presented to the Federal Court are accurate regarding Judge Green Blatt and can be verified by requesting transcripts of the court hearings. If the audio is also requested the court can verify the verbal attitude of the Judge.

Judge GreenBlatt is aware of the extorting practices imposed by Hanover Park, and is therefore liable under 42 U.S.C. 1986: action for neglect to prevent conspiracy, and 42 U.S.C. 1983: deprivation of rights.

I have my hotel bill from the time of my arrest for domestic battery in Hanover Park. The hotel bill says one guest, Dawn Daenens did not live with me and that is indicated on my hotel bill. Illinois law states that domestic battery is intended for people that live in the same household. They do not have grounds to charge me with domestic battery. They do not have grounds to charge me with anything that is initiated illegally through violations of the RICO act and other listed United States Code.

## Concluding Damages and Requests for Retribution:

1. Plaintiff seeks compensatory damages for personal relief from Defendant's in the amount of $100,000 for the claims in this complaint. Exempt from this amount are Arties Towing and Redmon's Towing.

2. The actions initiated by the Defendant's in this case have caused irreparable harm to

the Plaintiff. The Plaintiff seeks damages because was unable to begin employment with Mercedes Benz of Naperville because of wrongful arrest and discriminatory, bias prosecution of his case.

3. Plaintiff seeks compensatory damages because he was a victim of extortion by said individuals in this complaint. These actions have caused the Plaintiff massive amounts of stress and resulted in 3 days of incarceration and $2500 related to bond, and fines prior to resolution of his criminal charges. This dollar amount includes travel expenses in pursuit of employment with Mercedes Benz of Naperville, and traveling to and from Indiana to retrieve Plaintiff's vehicle. Plaintiff had to sell his truck because of this.

4. Plaintiff also seeks additional punitive damages in the amount of $20,000,000 with the intent of financial penalties forcing Defendants to amend and correct illegal practices. Arties Towing and Redmon's towing are included in these damages to include all Defendants listed. Plaintiff seeks this $20,000,000 to be used at his discretion.

5. Plaintiff requests at his discretion, and with the cooperation, and direction of the Federal Court, that the $20,000,000 be placed in a trust fund for which all residents of Illinois who have lost their vehicles because of these excessive "administrative fees", and "penalties" imposed by Police Departments prior to the resolution of the accused individuals criminal charges, be entitled to damages. Plaintiff requests these funds be distributed to victims from his trust fund upon reviewing records of Police Department impounds, records of police fines imposed, and of which vehicles where sold by towing companies that were acquired because of these police fines, beginning with the Hanover Park Police Department, Arties Towing, Redmon's Towing, Bloomingdale's Autorepair and Towing, and filtering to other municipal areas following payments for Hanover Park's crimes.

6. Plaintiff requests that the stress of the $20 Million financial burden be placed in the amount of $5,000,000 on the Illinois Attorney General's Office for failing to protect its citizens from Discrimination, Extortion and illegal Rackets all over the State of Illinois. Plaintiff wishes the remaining $15,000,000 of this financial burden be directed at the court's discretion to the remaining Defendants in this case.

7. After Damages are paid out of this $20,000,000, if any amount remains in this trust fund, plaintiff would, with the assistance of the Federal Court, like a court order requiring the Defendants to use the remaining amount of money for educational courses regarding The United States Constitution, and its applications in Modern Day Law.

This trust fund, with the direction of the Federal Courts, will entitle victims of these crimes perpetrated by the Defendant's to:

- Damages to include the weakening of their finances during the defense of a pending criminal case, and discrimination.
- Damages to include the loss of transportation (vehicle), and the effective ability to commute to and from work, or the ability to commute to sources of income, because they

20

lost their vehicle due to their vehicle being stolen by tow companies and police departments by means of extortion.

- Damages to include the lack of action on the peoples behalf in regards to the Cook County Prosecutor's Office and the Illinois Attorney General's Office.
- Damages allowing the victims to use this trust fund to purchase a similar vehicle if they lost their vehicle, because they could not afford to pay both the Police Department and Towing Company, resulting in the loss of their vehicle.

8. Plaintiff will seek to subpoena the records of citizens who were assessed a $500 fine to release their vehicles from the Hanover Park Police Department. Plaintiff seeks to subpoena record of vehicles sold by the three towing companies listed in this complaint. Plaintiff seeks to cross reference those records to see what citizens vehicles were sold by the tow companies, who were assessed the $500 fines from the Hanover Park Police Department. Plaintiff seeks the assistance of the Federal Court to expand this investigation throughout Illinois, and primarily in the Chicago, Illinois area.

9. Plaintiff seeks to subpoena and records of individuals convicted of offenses where Police Departments profited from charges prior to their resolution in court. Plaintiff requests that the Federal Court order said discovered convictions overturned and dismissed. These actions have created a conflict of interest damaging to defendants in criminal cases where local Police Departments have profited simply from arresting people.

10. This is not a class action lawsuit. The Plaintiff seeks punitive damages, that he chooses to place in a trust fund, that he chooses to give others access to. Furthermore Plaintiff understands that a $20,000,000 lawsuit could be interpreted as upsetting and stressful for the Defendant's. Plaintiff understands this, and is sympathetic, and advises the Defendants to think of the $20 million as more of an "administrative penalty" rather than a serious lawsuit, to ease their mind regarding the matter.

11. Intervention by Attorney General, the Plaintiff requests that the **Attorney General of the United States** intervene to correct these illegal actions. The actions listed in this complaint discriminate against low income citizens, and exploit the general population under the "color of law" via the guise of illegal, locally adopted municipal ordinances. Civil Procedure Rule 5.1: **(b.)Certification by the Court: The court must, under 28 U.S.C. §2403 (a.), certify to the appropriate attorney general that a statute has been questioned.** The Attorney General of Illinois is party to this suit and therefore disqualified, the next step up is the Attorney General of the United States.

12. Plaintiff requests a **jury trial** and urges the court to not dismiss this case. This action is right, and is justified. To dismiss this cause of action is to fail the people of the United States, and the people of Illinois. It is up to the people to decide on the legalities of actions like this, and it always has been. The true power to govern regarding clear rights and wrongs has been taken away from the average citizen, and is the primary reason the United States is on the verge of economic collapse. Backing this claim will not negate the current economic status. It will boost the economy, and provide hope to people who have

been stepped on by the Defendants. This lawsuit will promote the peoples faith in the United States Federal Government. Given the current economic status I think we can all agree people need faith in Government.

13. Total amount in damages sought by plaintiff is $20,100,000. The $20,000,000 in punitive damages in this case is not unconstitutional because the illegal actions listed in this complaint are happening on such a massive scale in Illinois. These illegal municipal codes are a disease that is slowly spreading throughout Illinois. Its disease that is slowly attempting to override the United States Constitution a little bit at a time as it spreads from municipal to municipal. Give them an inch and they take a foot. Give them a foot and pretty soon they take a football field. If these illegal practices are allowed to continue in Illinois, soon it will be adopted by other municipals in other states requiring even more court resources to stop it.

14. Any logical person can see that these illegal practices are **WRONG**. $20,000,000 in punitive damages is not unconstitutional in this situation. This is the amount in penalties required to <u>stop</u> these corrupt statewide practices. Lawsuits are arising in courts all over Illinois regarding similar situations listed in this complaint.

Respectfully Submitted,

Joseph D. Lewis

22